[Cite as *State v. Beidleman*, 2024-Ohio-1988.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                    No. 113270

    v.                           :

MICHAEL BEIDLEMAN,                      :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-669749-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Assistant Prosecuting Attorney, *for appellee.*

Erin R. Flanagan, Esq., Ltd., and Erin R. Flanagan, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Michael Beidleman appeals his conviction of murder, in violation of R.C. 2903.02(A), for the purposeful killing of Jarron Grayes. The trial court imposed a term of life with the possibility of parole after 15 years, to be served consecutive to a one-year mandatory term on the attendant firearm specification. For the following reasons, that final conviction is affirmed.

{¶ 2} Beidleman was charged in a ten-count indictment alleging that he purposely killed Grayes, kidnapped another victim, and attempted to conceal his crimes by tampering with evidence, intimidating witnesses, and hiding the corpse. During the pretrial proceedings, Beidleman filed numerous motions pro se, despite the trial court's repeated admonitions against that course of action because defense counsel was appointed to represent him in the proceedings. *See State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 29, 32 ("[I]n Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously" in preparing for and conducting the trial.).

{¶ 3} In general, as pertinent to this appeal, Beidleman complained that the state failed to turn over gunshot-residue ("GSR") testing results and failed to test certain items, which were discovered in the vehicle he was in at the time of his arrest, for the presence of his DNA. The state initially maintained that it had not conducted the DNA or GSR testing on the items specified by Beidleman because it was

unnecessary and irrelevant, even assuming that the results were negative, and therefore, there was nothing to disclose. Beidleman sought GSR testing on the clothing he was wearing on the day of his arrest, which occurred almost three weeks after the murder, and without any evidence demonstrating the state believed him to be wearing the same clothes. He also wanted DNA testing done on items seized from the vehicle he was in at the time of his arrest. There is no indication that the defense counsel sought independent testing; the sole argument during the pretrial proceedings was that it was the state's obligation to test the materials.

{¶ 4} This discovery issue tainted his relationship with one of the three attorneys first appointed to represent him. The trial court permitted that attorney to withdraw, but Beidleman constantly challenged the efficacy of his remaining two attorneys of record through the remainder of the pretrial process.

{¶ 5} Eventually, the state relented and performed both tests, turning over the results through discovery. Tr. 49:19-24 (defense indicating they received the results of the GSR testing but not disclosing the results on the record);[1] tr. 69:8-17 (indicating that all items seized from the vehicle in question were tested for DNA and that testing did not identify Beidleman as having been in contact with the items). Beidleman was present at the pretrial proceedings in which the state either disclosed the results of the DNA testing or the fact of GSR test results being submitted to the defense through the discovery process. *See generally id.*

---

[1] One could safely assume that GSR testing on Beidleman's clothing he wore at the time of his arrest, three weeks after the murder, came back negative for residue.

{¶ 6} On the day of trial, Beidleman agreed to plead guilty to a single count of murder, along with an attendant one-year firearm specification. During his plea colloquy, Beidleman indicated that he was satisfied with the services provided by his attorneys. The trial court accepted the guilty plea and imposed the specification.

{¶ 7} In this appeal, Beidleman claims that his inability to obtain the exculpatory DNA and GSR results rendered his guilty plea invalid because the trial court should have granted a continuance of the trial in order for him to obtain the necessary testing. This, according to Beidleman, is demonstrated by the fact that his counsel filed a motion to continue on the day of trial to address that lack of discovery.

{¶ 8} Beidleman's motion to continue the trial date, however, was not based on the DNA or GSR testing. Instead, the motion was based on a "data dump" from Beidleman's phone that was provided through a discovery portal approximately a month before the trial date and, additionally, because defense counsel had just obtained notice that the state had discovered another phone with potentially relevant information. The discovery issues with the phone data were not discussed in this appeal, and therefore, any argument pertaining to that discovery item has been forfeited. *See, e.g., State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, 87 N.E.3d 1203, ¶ 44 (concluding arguments not presented to the lower court are forfeited).

{¶ 9} Beidleman claims in the sole assignment of error that the "trial court violated [his] constitutional rights when it denied him replacement counsel for [his trial attorneys] who failed to gather crucial DNA and GSR evidence during their

eleven-month representation of him." According to Beidleman, had he seen the results of the DNA and GSR testing, he would not have entered a guilty plea to the single count of murder. The record does not support Beidleman's argument.

{¶ 10} The Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution establish that all defendants in criminal proceedings shall have the assistance of counsel for their defense. The Supreme Court also recognizes that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "when a defendant enters a guilty plea as part of a plea bargain, he [generally] waives all appealable errors that may have occurred at trial, unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea." *State v. Brusiter*, 8th Dist. Cuyahoga No. 98614, 2013-Ohio-1445, ¶ 5, citing *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5, and *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991). This includes claims for ineffective assistance of counsel. *State v. Cook*, 8th Dist. Cuyahoga No. 112742, 2024-Ohio-841, ¶ 9.

{¶ 11} In order to establish ineffective assistance of counsel, a defendant must show "(1) that counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Drain*, 170 Ohio St.3d 107, 2022-Ohio-3697, 209

N.E.3d 621, ¶ 36, citing *Strickland*, 466 U.S. 668, at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 142-143, 538 N.E.2d 373 (1989).  In the context of a guilty plea, this means the defendant must demonstrate that but for the attorney's deficient performance, he would not have pleaded guilty.  *Milczewski* at ¶ 4, citing *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992).  A "reasonable probability" is a probability of a different result sufficient enough to undermine confidence in the outcome, the same deferential inquiry as applied under the plain-error standard of review.  *Drain* at ¶ 52, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), and *Strickland* at 694.

{¶ 12} Beidleman's sole argument is without merit.  He cannot demonstrate any probability, much less a reasonable one, that his plea would not have been entered had his trial counsel obtained the GSR and DNA testing results before Beidleman considered the state's proposed plea offer.  Those results were in fact provided to Beidleman's defense during the pretrial proceedings and before he entered his guilty plea, which occurred on the morning of trial.  The state expressly communicated the results of the DNA testing in Beidleman's presence, the results excluded him as having been in contact with the items seized from the vehicle, and defense counsel represented to the court that the GSR testing results were received.  Tr. 49:19-24 (defense indicating they received the results of the GSR testing but not disclosing the results on the record); tr. 69:8-17 (indicating that all items seized from the vehicle in question were tested for DNA and that testing did not identify Beidleman as having been in contact with the items).  After that disclosure,

Beidleman engaged in further discussions with his counsel regarding the state's offer to plead guilty. Tr. 78:1-15.

{¶ 13} Inasmuch as Beidleman claims that he never received the results of the GSR and DNA testing and that impacted the validity of his guilty plea, that argument is in part not supported by the record as to the negative results of the DNA testing and otherwise cannot be substantiated without considering facts outside the record as to the GSR testing, i.e., introducing evidence of his conversations with his attorneys based on the GSR results being turned over in discovery but the results not being included within the appellate record. *See, e.g., State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 66 (ineffective-assistance claims relying on facts outside the record cannot be adjudicated within the direct appeal). Whether the actual results of the GSR testing were communicated to Beidleman in advance of his guilty plea is not an issue that can be resolved within this appeal and based on the limited record. *Id.* Either way, the record conclusively demonstrates that Beidleman had the information before considering the state's plea offer. Beidleman cannot demonstrate prejudice or even a deficient performance for that matter.

{¶ 14} The sole assignment of error is overruled. Beidleman's final conviction for the murder of Grayes is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR