[Cite as *State v. Stafford*, 2023-Ohio-2062.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,             :

                                    No. 111989

    v.                                        :

HENRY STAFFORD,                            :

    Defendant-Appellant.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 22, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-645506-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Anthony T. Miranda, Assistant Prosecuting
Attorney, *for appellee*.

John F. Corrigan, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Henry Stafford ("Stafford") appeals the trial court's denial of his motion to withdraw guilty plea. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    On October 24, 2019, Stafford drove to his home with a gun "with the intentions of confronting" his girlfriend Tabitha and her brother Christopher.  When he arrived home, Stafford "took the pistol and walked into the house and went straight into the bedroom."  Christopher was lying in the bed.  Stafford shot and killed him.

{¶ 3}    Stafford was indicted on November 6, 2019, with seven crimes arising from Christopher's death, including aggravated murder.  On June 30, 2020, the state of Ohio moved to amend the indictment and Stafford pled guilty to murder, in violation of R.C. 2903.02(A), with a firearm specification; intimidation of a crime witness under of R.C. 2921.04(B)(2); and having a weapon while under disability in violation of R.C. 2923.13(A)(3).  The court sentenced Stafford the same day to life in prison with parole eligibility after 17 years.

{¶ 4}    On February 8, 2022, Stafford filed a pro se motion to withdraw his guilty plea.  Attached to his motion was Stafford's affidavit, which provided his account of the events on October 24, 2019.  On March 22, 2022, the court denied Stafford's motion.  It is from this order that Stafford appeals, raising one assignment of error for our review:[1]

> I.  The trial court erred in denying appellant's Criminal Rule 32.1 motion to withdraw his guilty plea or in the alternative denying the motion without conducting an evidentiary hearing.

---

[1] On October 13, 2022, this court sua sponte assigned Stafford appellate counsel.

## II. Law and Analysis

### A. Withdrawal of Guilty Plea

{¶ 5} Pursuant to Crim.R. 32.1, a "motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Ohio courts have held that "manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Wooden*, 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588, ¶ 10. A defendant seeking to withdraw his or her plea has the burden of establishing manifest injustice. *Id.* "We review a trial court's ruling on a motion to withdraw a guilty plea for an abuse of discretion." *State v. Hines*, 8th Dist. Cuyahoga No. 108326, 2020-Ohio-663, ¶ 7.

### B. Hearing on Motion to Withdraw Guilty Plea

{¶ 6} A "trial court need not hold an evidentiary hearing on a postsentence motion to withdraw a guilty plea if the record indicates the movant is not entitled to relief, and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." *State v. Brown*, 8th Dist. Cuyahoga No. 108063, 2019-Ohio-3773, ¶ 14.

### C. Ineffective Assistance of Counsel

{¶ 7} On appeal, Stafford argues that his plea was not knowing, voluntary, and intelligent because his defense counsel was ineffective in three areas: "1) trial

counsel accepted a plea agreement without his express authorization; 2) trial counsel misinformed him on an issue of law critical to the decision to plea or go to trial; [and] 3) trial counsel unduly influenced his decision to plead guilty."

{¶ 8} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id*. at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

### D. Analysis

#### 1. Res Judicata

{¶ 9} "Res judicata generally bars a defendant from raising claims in a Crim.R.32.1 post-sentencing motion to withdraw guilty plea that he raised or could have raised on direct appeal." *State v. Straley*, 159 Ohio St.3d 82, 147 N.E.3d 623, 2019-Ohio-5206, ¶ 23. "Further, res judicata bars claims of ineffective assistance of counsel that were based on facts in the record and were raised or could have been raised on a prior appeal." *State v. Westley*, 8th Dist. Cuyahoga No. 108847, 2020-Ohio-809, ¶ 11.

{¶ 10} To the extent Stafford's arguments that his trial counsel was ineffective with respect to his guilty plea could have been raised in a direct appeal,

which he did not file, these arguments are barred by the doctrine of res judicata. *See State v. Bradford*, 8th Dist. Cuyahoga Nos. 110907, 110908, 110909, 110910, and 110912, 2022-Ohio-1503, ¶ 10 (In an appeal of the denial of a postconviction relief petition, the doctrine of res judicata barred defendant's argument that he was improperly induced to plead guilty.). "In order to avoid the preclusive effect of res judicata, post-conviction relief claims must be 'based on evidence outside of the original record that existed'" at the time a direct appeal was or could have been brought. *State v. Meyerson*, 9th Dist. Summit No. 30260, 2023-Ohio-708, ¶ 15, quoting *State v. Bulls*, 9th Dist. Summit No. 27713, 2015-Ohio-5094, ¶ 9.

## 2. Appellant Failed to Establish Manifest Injustice

{¶ 11} Notwithstanding the doctrine of res judicata, even if this court were to address the merits of the instant case, we would find that Stafford's arguments regarding manifest injustice due to ineffective assistance of counsel fail. Stafford's arguments are based on his belief that "he was guilty of voluntary manslaughter," and his trial counsel was ineffective when "he was rushed into a murder plea * * *."

### i. No Evidence Appellant's Counsel Misinformed Him

{¶ 12} We turn first to Stafford's second argument — that his "counsel misinformed him on an issue of law critical to the decision to plea or go to trial." According to Stafford's appellate brief, the "misinformation" was his trial counsel's advisement "that the evidence was overwhelming that he purposely caused the death of" Christopher. Stafford argues that the facts of his case, as set forth in his

affidavit, show that he acted as a result of "sudden passion" or a "sudden fit of rage," rather than purposefully.  We disagree.

{¶ 13} Voluntary manslaughter is defined in R.C. 2903.03(A), which states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."  It is well established that "sudden" passion or fit of rage is negated when there is time for the defendant to "cool off." *See, e.g., State v. Burkes*, 8th Dist. Cuyahoga No. 106412, 2018-Ohio-4854, ¶ 32 (A 10-15 minute "lapse of time between the alleged threat and the shooting enabled Burkes to 'cool off.'  Therefore, as a matter of law, Burkes cannot establish 'sudden passion' or a 'sudden fit of rage' required for voluntary manslaughter.").

{¶ 14} In contrast, murder is defined under R.C. 2903.02(A) which provides, "No person shall purposely cause the death of another * * *."

{¶ 15} The Ohio Supreme Court has long held that voluntary manslaughter is an inferior degree of murder.  *State v. Rhodes*, 63 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992).  The element of provocation required to prove voluntary manslaughter "mitigates the offender's culpability" for murder.  *State v. Tyler*, 50 Ohio St.3d 24, 37, 553 N.E.2d 576 (1990); *Rhodes* at 617-618.

{¶ 16} In the case at hand, Stafford's affidavit, which he attached to his motion to withdraw his guilty plea, states that he overheard Tabitha and Christopher talking to each other via a phone call between Stafford and Tabitha that Tabitha did

not disconnect. Stafford inferred from Tabitha and Christopher's conversation that he overheard that they were "having sex." According to Stafford, the following is what happened next:

> Because of the dangerous community that me and Tabitha lived in I kept a pistol on my person at all times. I drove home with the intentions of confronting Tabitha and Christopher. * * * I tried to break free from the anger, but I could not. The closer I got to my home, the more I thought about what they were doing. * * *

> When I arrived home I took the pistol and walked into the house and went straight into the bedroom. I wanted to catch them in the act so they would not be able to deny it. But when I went into the bedroom I saw Christopher lying in my bed, naked. The hurt and pain I was experiencing turned into black rage, and without giving it a thought, or saying a single word, I began shooting him.

{¶ 17} Upon review, we find that Stafford's trial counsel did not misinform him "on an issue of law critical to the decision to plea or go to trial." The allegations in Stafford's affidavit do not show that he acted "under the influence of sudden passion or in a sudden fit of rage," as required to support an involuntary manslaughter conviction pursuant to R.C. 2903.03(A). Rather, Stafford's affidavit shows that he purposely drove home with a loaded gun to confront Tabitha and Christopher. Importantly, Stafford admits that he "thought about" what he believed he learned through the phone call as he was driving. When he arrived home, he "took the pistol," walked into the bedroom, and killed Christopher. This is evidence that Stafford acted with purpose and had time to cool off.

### ii. No Evidence of Impropriety at Plea Hearing

{¶ 18} Regarding Stafford's first and third arguments, we find that there is no evidence in the record to support Stafford's assertions that his "counsel accepted

a plea agreement without his express authorization" or that his "counsel unduly influenced his decision to plead guilty." Rather, the evidence in the record shows that Stafford knowingly, intelligently, and voluntarily pled guilty to murder.

{¶ 19} Our review of Stafford's plea hearing transcript shows that nothing was stated on the record about the events depicted in Stafford's affidavit. At his plea hearing, the prosecutor set forth the offenses to which Stafford would be pleading guilty, namely murder, intimidation of a witness, and having a weapon while under disability. According to the record, in exchange for his guilty plea, the state would dismiss the remaining charges, including aggravated murder. The court reiterated the terms of Stafford's plea deal. Stafford stated on the record that he was satisfied with his lawyers, he understood the charge of murder and the effect of pleading guilty to murder, and that "I want to take the plea bargain."

{¶ 20} The court conducted a full Crim.R. 11 hearing, and Stafford pled guilty to the agreed-upon three offenses. The following colloquy occurred:

THE COURT: [D]id you, in fact, purposely cause the death of Christopher Eden?"

THE DEFENDANT: No, Your Honor.

* * *

THE COURT: Why are you pleading guilty, then?

THE DEFENDANT: Because I did it.

{¶ 21} At the plea hearing, the court asked defense counsel if they received in discovery "evidence that, if believed by a jury, could support a finding that * * *

Stafford purposely caused the death?" Defense counsel replied, "Yes, we [did], Your Honor. We have shared that with [Stafford]."

{¶ 22} A review of the transcript of the plea hearing reveals that Stafford entered his plea of guilty, not counsel. Further, there is no evidence of undue influence by counsel.

{¶ 23} Stafford's motion to withdraw his guilty plea and accompanying affidavit do not show that his trial counsel was ineffective; therefore, no manifest injustice occurred when the trial court accepted Stafford's guilty plea. Additionally, as previously stated, the trial court need not hold a hearing on a motion to withdraw a plea when the defendant "has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." *Brown*, 8th Dist. Cuyahoga No. 108063, 2019-Ohio-3773, at ¶ 14.

{¶ 24} Accordingly, the trial court acted within its discretion when it denied Stafford's postsentence motion without holding a hearing, and Stafford's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN A. GALLAGHER, J., CONCUR