[Cite as *State v. Bates*, 2024-Ohio-3309.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :        No. 113620

v.                                :

ROBERT BATES,                     :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 29, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637833-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Frank Romeo Zeleznikar, Assistant
Prosecuting Attorney, *for appellee.*

Robert Bates, *pro se.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1}    Defendant-appellant Robert Bates, pro se, appeals the trial court's

denial of his postsentence motion to withdraw his guilty pleas.[1]  Bates contends that

---

    [1] Although the caption of Bates' appellate brief references both Cuyahoga C.P. No.
CR-19-637833-A ("637833") and Cuyahoga C.P. No. CR-19-636835-B ("636835"), Bates

he was denied the effective assistance of counsel and that his guilty pleas were not knowingly, intelligently and voluntarily entered because he did not know, at the time he entered his guilty pleas, that the evidence that led to the charges against him was obtained through an allegedly "illegal search." Bates contends that, had he known this, (i.e., had counsel properly investigated and advised him), he would not have pled guilty to the charges at issue and that the trial court abused its discretion in denying his motion to withdraw his guilty pleas "in the presence of a manifest injustice."

{¶ 2} For the reasons that follow, we affirm.

**Factual Background and Procedural History**

### Trial Court's Imposition of Postrelease Control in Prior Case in 2008

{¶ 3} In October 2008, Bates was sentenced to an aggregate nine-year prison term in Cuyahoga C.P. No. CR-07-501710-A ("501710") following guilty verdicts on one count of kidnapping with a sexual motivation specification, four counts of rape and two counts of robbery. At the sentencing hearing (the "2008 sentencing hearing"), the trial court allegedly failed to advise Bates of the consequences of violating postrelease control. *See State v. Bates*, 2022-Ohio-475,

---

filed a notice of appeal of the trial court's denial of his motion to withdraw his guilty pleas in 637833, only. Accordingly, our appellate jurisdiction is limited to review of the trial court's ruling in that case, and we do not address any alleged errors related to the trial court's ruling in 636835. Likewise, we do not address Bates' arguments regarding any alleged deficiencies on the part of defense counsel at the 2018 hearing in Cuyahoga C.P. No. CR-07-501710-A. *See* Appellant's Br. at 7-8. Such matters are outside the scope of this appeal.

¶ 2, 18. In its sentencing entry, the trial court imposed five years of postrelease control but failed to include a statement that postrelease control was mandatory[2] and that a violation of postrelease control would subject Bates to the consequences set forth in R.C. 2967.28 (the "2008 sentencing entry"). *See id.* at ¶ 1-2. Bates filed a direct appeal challenging his convictions but neither he nor the State challenged the postrelease control portion of his sentence on appeal. *State v. Bates*, 2009-Ohio-5819 (8th Dist.). This court affirmed Bates' convictions. *Id.* at ¶ 1. The Ohio Supreme Court declined discretionary review. *State v. Bates*, 2010-Ohio-799.

{¶ 4} Nearly ten years later, the State brought the error of the trial court's postrelease control notification to the trial court's attention. In October 2018, the trial court held a classification hearing on Bates' sexual-predator status (the "2018 hearing"). At the hearing, the prosecutor raised an issue concerning the trial court's 2008 imposition of postrelease control. *Bates*, 2022-Ohio-475, ¶ 4. The prosecutor explained that he had reviewed the 2008 sentencing entry and discovered that the trial court had failed to include notification of the mandatory nature of postrelease control and the consequences of violating postrelease control in that entry. Over Bates' objection, the trial court proceeded to advise Bates of his postrelease control obligations and the consequences of violating postrelease control. *Id.* The trial court then issued a new sentencing entry that included the required notifications (the

---

[2] Bates was purportedly advised that the period of postrelease control was mandatory at the sentencing hearing. *Bates*, 2022-Ohio-475, at ¶ 35 (Kennedy, J., dissenting), ¶ 47 (DeWine, J., dissenting).

"2018 sentencing entry").[3]  *See Bates*, 2022-Ohio-475, at ¶ 1, 5.  Bates appealed, challenging the postrelease control portion of the 2018 sentencing entry.  *State v. Bates*, 2020-Ohio-267, ¶ 1, 10.

**{¶ 5}**  Relying on the Ohio Supreme Court's prior void-sentence jurisprudence, this court affirmed.  It concluded that the 2008 sentencing entry was "not sufficient to validly impose postrelease control" and that the postrelease control portion of Bates' sentence as imposed in 2008 was, therefore, void, but because Bates had not yet served his entire prison sentence, the trial court was permitted to correct the previously defective postrelease control sanction by properly notifying Bates of postrelease control at the 2018 hearing and issuing a new sentencing entry.  *Id*. at ¶ 20-26.  Bates appealed to the Ohio Supreme Court.  The Ohio Supreme Court accepted Bates' discretionary appeal.  *State v. Bates*, 2020-Ohio-1090.

**{¶ 6}**  Citing its decisions in *State v. Harper*, 2020-Ohio-2913, and *State v. Hudson*, 2020-Ohio-3849, the Court held that "[a]n attack on a trial court's imposition of postrelease control in a sentence must be brought on direct appeal or it will be barred by res judicata," *State v. Bates*, 2022-Ohio-475, ¶ 32, citing *Harper* at ¶ 42, and *Hudson* at ¶ 17, and that "[t]his holding applies to the state as well as the defendant," *Bates* at ¶ 32, citing *Harper* at ¶ 43, and *Hudson* at ¶ 18.  "Because res judicata precluded the collateral attack on Bates's sentence," the Court held that

---

[3] For reasons that are not relevant here, this court remanded the case to the trial court twice for it to issue a new final judgment.  Both of the trial court's subsequent judgment entries contained postrelease control language identical to that in the October 2018 sentencing entry.  *Bates*, 2022-Ohio-475, at ¶ 5, fn. 1.

the trial court's 2018 sentencing entry was "improper and, therefore, of no effect." *Bates* at ¶ 32. The Court reversed the Eighth District "to the extent it [held] otherwise" and vacated "the portion of the 2018 sentencing entry imposing postrelease control on Bates." *Id.*

**Bates' Guilty Pleas in CR 637833**

{¶ 7} On March 15, 2019, a Cuyahoga County Grand Jury indicted Bates on two counts of aggravated robbery with one- and three-year firearm specifications and notice of prior conviction and repeat violent offender specifications, two counts of theft and one count of having weapons while under disability. The charges related to incidents on or about January 15, 2019 and January 17, 2019. Bates initially pled not guilty to all charges.

{¶ 8} The parties thereafter reached a plea agreement. On July 31, 2019, Bates pled guilty to an amended count of aggravated robbery with a one-year firearm specification (amended Count 1) and an amended count of aggravated robbery with a three-year firearm specification (amended Count 3). The parties further agreed to a recommended sentencing range of eight to ten years. In exchange for Bates' guilty pleas, the remaining counts were nolled.

{¶ 9} On September 30, 2019, the trial court sentenced Bates to an aggregate prison term of seven years, i.e., one year on the one-year firearm specification to be served prior to and consecutive to three years on the base offense in Count 1 and three years on the three-year firearm specification to be served prior to and consecutive to three years on the base offense in Count 3. The sentences on

the firearm specifications were to be served consecutively and the sentences on the base offenses were to be served concurrently. The trial court also imposed five years of mandatory postrelease control. Bates did not appeal his convictions.

**Prior Postconviction Filings**

{¶ 10} On August 9, 2022, Bates, pro se, filed a "petition to vacate or set aside judgment of conviction or sentence" pursuant to R.C. 2953.21. Bates argued that his convictions should be vacated because (1) his placement on postrelease control in CR 501710 was "unconstitutional," citing *Bates*, 2022-Ohio-475, (2) the "warrantless search" of his residence, which allegedly led to the charges in this case, violated the Fourth Amendment, (3) he was denied the effective assistance of counsel in violation of the Sixth Amendment and (4) he was denied due process of law in violation of the Fifth and Fourteenth Amendments based on the allegedly illegal search of his residence, unlawful seizure of evidence and deficient representation by defense counsel.

{¶ 11} Specifically, Bates argued that the constitutionality of the search that led to evidence of the offenses with which Bates was charged in this case was dependent on Bates being on postrelease control and subject to the supervision of the APA at the time of the search. He argued that because the Ohio Supreme Court held in *State v. Bates*, 2022-Ohio-475, that his "placement on PRC was unconstitutional,"[4] the search was "illegal" and "invalid," "all evidence gathered

---

[4] As stated above, contrary to Bates' assertion, the Ohio Supreme Court did not hold in *Bates*, 2022-Ohio-475, that Bates' "placement on PRC was unconstitutional."

during that search was 'fruit of a poison[o]us t[r]ee" and should have been "excluded" and "all charges should now be vacated in the interest of justice." He contended that defense counsel was ineffective for failing to file a motion to suppress the evidence and that, if he had done so, "the fact of Mr. Bates['] illegal placement on postrelease control supervision would have been known and . . . the evidence excluded." Bates asserted that, "[i]nstead, based on the professional opinion of [defense counsel] that the pr[e]ponderance of [the] evidence was so overwhelming that it would be nearly impossible for him to create an advisarial [sic] setting and/or prevail at trial, . . . Mr. Bates entered a plea of guilty."

{¶ 12} The State opposed the motion, arguing that the trial court lacked jurisdiction to consider Bates' untimely petition for postconviction relief under R.C. 2953.21(A) and 2953.23(A)(1). The State further argued that Bates failed to identify "any evidence outside the record" that he was unavoidably prevented from timely discovering, that Bates' claim that he was not on postrelease control was a "misread[ing]" of the Ohio Supreme Court's decision in *Bates*, 2022-Ohio-475, that Bates' placement on postrelease control pursuant to the 2008 sentencing entry "remained in effect" following *Bates*, that Bates could not now challenge the 2008 imposition of postrelease control because under *Harper*, 2020-Ohio-2913, the trial court's error in sentencing Bates to postrelease control in 2008 rendered his

Rather, it expressly "decline[d] to address the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates." *Id.* at ¶ 31.

sentence voidable, not void, and subject to challenge only on direct appeal and that his claims were barred by res judicata.

{¶ 13} In reply, Bates argued that he was unavoidably preventing from discovering the facts on which he relied to support his claims within the time frame provided under R.C. 2953.21 for a timely petition for postconviction relief because *Bates* was not decided until February 2022 and that his ineffective assistance of counsel claim was not barred by res judicata because he did not file a direct appeal of his convictions.

{¶ 14} On October 18, 2022, Bates filed, pro se, a "motion to vacate sentence/conviction; dismiss with prejudice." Bates stated that his motion was a "common law motion to vacate," was "not to be construed as either a petition for post-conviction relief under R.C. 2953.21 or a collateral attack under Civ.R. 60(B)" and was, therefore, "not barred by (1) res judicata; (2) the doctrine of law of the case; or (3) the time constraints set forth in R.C. 2953.21 and Civ.R. 60(B)." Bates argued that the trial court's judgment was void because (1) the indictment was not signed by the grand jury foreperson, (2) he was denied the effective assistance of counsel due to defense counsel's failure to file a motion to suppress evidence and investigate the facts of his case and (3) he was denied due process based on the "illegal indictment" and deficient representation by defense counsel. Once again, the State opposed the motion, arguing that, "despite what its caption reads," the motion was an untimely petition for postconviction relief under R.C. 2953.21(A), the trial court lacked jurisdiction to consider it and, in any event, Bates' claims were barred by res

judicata because his claims could have been raised on appeal and Bates did not appeal his convictions.

{¶ 15} On January 25, 2023, the trial court summarily denied both Bates' petition to vacate or set aside judgment of conviction or sentence and Bates' motion to vacate sentence/conviction; dismiss with prejudice without a hearing. Bates did not appeal the trial court's rulings.

**Motion to Withdraw Guilty Pleas**

{¶ 16} On May 12, 2023, Bates, pro se, filed a "motion to withdraw guilty plea pursuant to Ohio Crim.R. 32.1." He filed an "amended motion to withdraw guilty plea" in July 2023. In his amended motion, Bates argued that he should be permitted to withdraw his guilty pleas because he had been "deprived of the effective assistance of counsel" in violation of the Sixth Amendment to the United States Constitution at the time he entered his guilty pleas and that due to the ineffective assistance of counsel, his guilty pleas were not entered knowingly, intelligently and voluntarily.

{¶ 17} Specifically, Bates claimed that, at the time he entered his guilty pleas, (1) he was "under duress" "due to the overwhelming evidence gathered and presented by the state," (2) his guilty pleas were "misinformed" due to his belief that the APA and his parole officer had the authority to conduct a search of his residence and (3) he was unaware that (a) the State was barred by res judicata from seeking to correct errors in the trial court's imposition of postrelease control, (b) the trial court

"could not impose PRC" on him and (c) the Ohio Supreme Court would later "reverse[] and vacate[] the PRC portion of his sentence."

{¶ 18} Bates further claimed that the prosecutor and his defense counsel "withheld . . . information" from him regarding the improper imposition of postrelease control in 501710 and that "he never knew" that an appeal of the 2018 sentencing entry was "in process" while this case was pending. He claimed that "if this information was made aware to him," he would not have accepted a plea agreement because "without PRC the state would not have had enough probable cause to search his residence" and "gather [the] evidence" that was used to support the charges against him. Bates claimed that if his counsel had conducted a thorough investigation and filed a motion to suppress the evidence obtained in the search, the "unlawful evidence that was gathered would have been suppressed and [the] matter would have been dismissed."

{¶ 19} In support of his motion, Bates attached copies of the trial court's September 30, 2019 sentencing journal entries in this case and 636835 and a notarized "declaration under penalty of perjury for Robert Bates," in which Bates described the timing and circumstances of the appeal of the 2018 sentencing entry, his lack of knowledge of the same, the Ohio Supreme Court's decision in *Bates*, 2022-Ohio-475, and the facts and circumstances leading up to his guilty pleas as set forth in the motion. Bates requested a hearing on his motion.

{¶ 20} The State filed an opposition in which it argued that Bates' motion should be denied because (1) Bates waited nearly four years before seeking to

withdraw his guilty pleas, (2) Bates' claims were barred by res judicata because Bates failed to point to any evidence outside of the record in support of his claims that would have precluded him from raising his arguments on appeal and (3) Bates was not entitled to a hearing on his motion because Bates had failed to provide any facts or evidence that demonstrated a manifest injustice had occurred. The State made no mention of the Ohio Supreme Court's decision in *Bates* and did not address any of the specific claims Bates made in his motion, including Bates' claims regarding the effect of *Bates* on his postrelease control in 501710, the lawfulness of the search of Bates' residence in this case, the extent to which the charges in this case were based on evidence obtained through that search or Bates' claim that defects in his counsel's performance precluded him from entering knowing, intelligent and voluntary guilty pleas. On January 11, 2024, the trial court summarily denied Bates' motion to withdraw his guilty pleas without a hearing.

{¶ 21} Bates appealed, raising the following two assignments of error for review:

Assignment of Error No. 1
Appellant was denied due process and fundamental fairness when the trial court abused its discretion by denying the motion to withdraw guilty plea related to the effective assistance of counsel resulting in a manifest injustice.

Assignment of Error No. 2
Appellant was denied due process and suffered prejudice when the trial court denied the motion to withdraw guilty plea when the charges were based on evidence that was obtained in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution, which illegality was not discovered until after the plea had been made, resulting in a manifest injustice.

{¶ 22} Bates' assignments of error are interrelated. Accordingly, we address them together.

**Law and Analysis**

### Standard for Withdrawing Postsentence Guilty Pleas

{¶ 23} The withdrawal of a guilty plea is governed by Crim.R. 32.1, which states:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶ 24} The defendant bears the burden of establishing the existence of "manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. Manifest injustice has been described as "a clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998), "that is evidenced by 'an extraordinary and fundamental flaw in the plea proceeding,'" *State v. McElroy*, 2017-Ohio-1049, ¶ 30 (8th Dist.), quoting *State v. Hamilton*, 2008-Ohio-455, ¶ 8 (8th Dist.); *see also State v. Vinson*, 2016-Ohio-7604, ¶ 41 (8th Dist.); *State v. Stovall*, 2017-Ohio-2661, ¶ 17 (8th Dist.) ("'Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'"), quoting *State v. Williams*, 2004-Ohio-6123, ¶ 5 (10th Dist.). A claim of manifest injustice must be supported by specific facts in the record or through affidavits submitted with the motion. *See, e.g., State v. Darling*, 2021-Ohio-440, ¶ 12 (8th Dist.); *State v. Geraci*, 2015-Ohio-

2699, ¶ 10 (8th Dist.). Postsentence withdrawal of a guilty plea is permitted "'only in extraordinary cases.'" *McElroy* at ¶ 30, quoting *State v. Rodriguez*, 2016-Ohio-5239, ¶ 22 (8th Dist.); *see also State v. Williams*, 2022-Ohio-2043, ¶ 21 (8th Dist.) ("'Manifest injustice' is an extremely high standard that permits the court to allow a plea withdrawal only in 'extraordinary cases.'"), quoting *State v. Herrera*, 2001 Ohio App. LEXIS 5769, *2 (3d Dist. Dec. 20, 2001).

{¶ 25} A trial court is not required to hold a hearing on every postsentence motion to withdraw a guilty plea. *See, e.g., State v. Nicholson*, 2021-Ohio-2584, ¶ 20. A hearing is required only if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea. *See, e.g., State v. Ritchie*, 2021-Ohio-1298, ¶ 17; *see also State v. Brown*, 2019-Ohio-3773, ¶ 14 (8th Dist.) ("[A] trial court need not hold an evidentiary hearing on a postsentence motion to withdraw a guilty plea if the record indicates the movant is not entitled to relief, and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice."); *see also State v. Tringelof*, 2017-Ohio-7657, ¶ 11 (12th Dist.) ("'A defendant must establish a reasonable likelihood that a withdrawal of his plea is necessary to correct a manifest injustice before a court must hold an evidentiary hearing on his motion.'"), quoting *State v. Williams*, 2009-Ohio-6240, ¶ 14 (12th Dist.).

{¶ 26} We review a trial court's decision to deny a defendant's postsentence motion to withdraw a guilty plea under an abuse-of-discretion standard. *See, e.g., Vinson*, 2016-Ohio-7604, at ¶ 42, citing *Smith*, 49 Ohio St.2d 261, at paragraph two

of the syllabus. A decision is an abuse of discretion when it is unreasonable, arbitrary or unconscionable. *See, e.g., State v. Brusiter*, 2023-Ohio-3794, ¶ 10 (8th Dist.); *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 27} Bates argues that his guilty pleas were not "knowingly [or] intelligently" made because, due to "the deficient performance and ill advise [sic]" of defense counsel, he did not know — until the Ohio Supreme Court issued its decision in *Bates* — that he "was not under PRC at the time of [his] parole officer's authorization of the warrantless search of his residence due to the PRC having been void." Bates contends that he would not have entered his guilty pleas had he known, at the time he entered his pleas, that (1) "he was not on PRC at the time of the warrantless search," (2) "the warrantless search was done without authority,"[5] (3) "the evidence obtained was subject to the exclusionary rule," (4) "any additional evidence obtained stemming from said search was also fruit of the poisonous tree" and (5) the charges "without the illegally obtained evidence, would be 'non-

---

[5] At that time, R.C. 2967.131(C) stated, in relevant part:

[D]uring a period of post-release control of a felon imposed under section 2967.28 of the Revised Code, authorized field officers of the authority who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the individual or felon has a right, title, or interest or for which the individual or felon has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess, if the field officers have reasonable grounds to believe that the individual or felon has left the state, is not abiding by the law, or otherwise is not complying with the terms and conditions of the individual's or felon's . . . post-release control.

existent.'" Bates asserts that the "illegal search" and application of the exclusionary rule, "left the State with little or no evidence for convictions in this case and CR-19-636835-B" and that defense counsel's "failure to investigate" "left [Bates] believing that the State had inculpatory evidence that he had committed crimes when all of the evidence was obtained from an illegal search and seizure and subject to the exclusionary rule." Based on these facts, Bates asserts that he "met the requirement of showing a manifest injustice occurred in his acceptance of the plea agreement" and that the trial court, therefore, abused its discretion in denying his motion to withdraw his guilty pleas.

{¶ 28} The State responds that the trial court properly denied Bates' motion because (1) Bates waited nearly four years before seeking to withdraw his guilty pleas and "has given [the] court no explanation that would justify such a delay between sentencing and the instant motion," (2) Bates' claims were barred by res judicata and (3) under *Harper*, 2020-Ohio-2913, and *State v. Henderson*, 2020-Ohio-4784, "a trial court's failure to properly impose post-release control renders a sentence voidable, not void, and not subject to collateral attack."

**Res Judicata**

{¶ 29} Res judicata generally precludes a defendant from raising claims in a Crim.R.32.1 postsentence motion to withdraw a guilty plea, including claims of ineffective assistance of counsel, that could have been raised in a direct appeal of his or her convictions. *See, e.g., State v. Stafford*, 2023-Ohio-2062, ¶ 9, citing *State v. Straley*, 2019-Ohio-5206, ¶ 23, and *State v. Westley*, 2020-Ohio-809, ¶ 11 (8th

Dist.); *see also State v. Hughes*, 2024-Ohio-2269, ¶ 15 (8th Dist.) ("This court has recognized on multiple occasions that res judicata bars all claims raised in a motion to withdraw guilty plea under Crim.R. 32.1 that were or could have been raised in a prior proceeding."). Accordingly, to the extent Bates' ineffective assistance of counsel claims could have been raised in a direct appeal, which he did not file, these claims are barred by the doctrine of res judicata. *Stafford* at ¶ 10.

{¶ 30} The transcripts from the change of plea and sentencing hearings were not included in the record forwarded to this court on appeal. Accordingly, we cannot discern, from the limited record before us, whether there were facts in the record upon which Bates could have challenged his guilty pleas in a direct appeal, making the same or similar arguments to those he made in his motion to withdraw his guilty pleas. Although the State asserts, generally, that "any potential sentencing or plea errors could have been raised on appeal" and that Bates "does not direct [the] court to any evidence outside of the record that could not have been presented and raised on appeal," the State does not explain how or why this was so. Bates' motion was supported by an affidavit. And, at the very least, the facts related to the Ohio Supreme Court's 2022 decision in *Bates,* 2022-Ohio-475, would not have been part of the record in any direct appeal. The State does not mention *Bates* or Bates' affidavit in its appellate brief.[6] We need not resolve the res judicata issue here,

---

[6] The State also asserts that Bates' claims should be barred by res judicata because Bates had the opportunity to raise these issues, and did raise them, "in his initial motion to the trial court" and "in filings with the trial court which were subsequently denied." The State does not identify the "initial motion" or "filings" to which it refers and does not

because even if we were to consider the merits of Bates' arguments he has not shown that a manifest injustice exists that warrants the withdrawal of his guilty pleas.

**Timeliness of Motion**

{¶ 31} Timeliness of a motion to withdraw a guilty plea is a consideration for the trial court when deciding whether to grant or deny a defendant's motion to withdraw a guilty plea pursuant to Crim.R. 32.1. While Crim.R. 32.1 does not prescribe a time limitation, an "'undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is

---

otherwise explain its assertion, cite to the record or cite any authority in support of its assertion.

We note that Bates filed two untimely petitions for postconviction relief — the denial of which he did not appeal — in which he made some of the same arguments he made in his motion to withdraw his guilty pleas. A motion to withdraw a guilty plea and a petition for postconviction relief are alternative means of raising ineffective assistance of counsel claims. Postsentence motions to withdraw guilty pleas and postconviction relief petitions "exist independently" and are subject to different standards and requirements. *State v. Bush*, 2002-Ohio-3993, ¶ 13-14. A petition for postconviction-relief "initiates a separate civil proceeding" and involves a "collateral challenge to the validity of a conviction or sentence." *State v. Bethel*, 2022-Ohio-783, ¶ 47; R.C. 2153.21(K). A Crim.R. 32.1 motion, on the other hand, is not a collateral challenge to the validity of a conviction or sentence but is filed in the underlying criminal case and targets the withdrawal of a plea. *Bush* at ¶ 13. *But see State v. Day*, 2016-Ohio-36, ¶ 26-28 (2d Dist.) ("analysis of whether manifest injustice exists contemplates evaluating whether the defendant could have sought redress from the alleged prejudice through another form of remedy that was reasonably available to him"; where defendant had previously asserted the claims he was raising in his postsentence motion to withdraw guilty pleas in a petition for postconviction relief — "another form of remedy that was available to him" — which was denied by the trial court and affirmed by appellate court, "no manifest injustice" was shown and res judicata "barred relitigation" of his claims), citing *State v. Hartzell*, 1999 Ohio App. LEXIS 3812, *3-6 (2d Dist. Aug. 20, 1999). Because the State has not specifically argued in its appellate brief — or below — that Bates was precluded, based on res judicata or otherwise, from pursuing his ineffective assistance claims through a Civ.R. 32.1 motion to withdraw his guilty pleas after filing his unsuccessful untimely petitions for postconviction relief, we do not address the issue further here.

a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" *Bush*, 2002-Ohio-3993, ¶ 14, quoting *Smith*, 49 Ohio St.2d 261, at paragraph three of the syllabus.

{¶ 32} Bates' amended motion to withdraw his guilty pleas was filed in July 2023, nearly four years after he entered the pleas and more than sixteen months after the Ohio Supreme Court issued its decision in *Bates*, 2022-Ohio-475. Although Bates' delay in filing of the motion was a factor properly considered by the trial court in reviewing Bates' motion and exercising its discretion under Crim.R. 32.1, the timing of Bates' motion would not, in and of itself, preclude a finding of manifest injustice if the circumstances otherwise warranted it.

**Ineffective Assistance of Counsel**

{¶ 33} A criminal defendant has the right to effective assistance of counsel at all "'critical stages of a criminal proceeding,'" including when he or she enters a guilty plea. *Lee v. United States*, 582 U.S. 357, 363 (2017), quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *State v. Houk*, 2021-Ohio-2107, ¶ 19 (8th Dist.).

{¶ 34} Where, however, a defendant enters a guilty plea, thereby making "a complete admission of [his or her] guilt," Crim.R. 11(B)(1), the defendant generally waives the right to claim ineffective assistance of counsel except to the extent that counsel's errors precluded the defendant from entering a knowing, intelligent and voluntary guilty plea. *See, e.g., State v. Beidleman*, 2024-Ohio-1988, ¶ 10 (8th Dist.); *State v. Slater*, 2023-Ohio-608, ¶ 55 (8th Dist.). As this court has stated:

> "A failure by counsel to provide advice [which impairs the knowing and voluntary nature of the plea] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." . . . Accordingly, a guilty plea waives the right to claim that the accused was prejudiced by constitutionally ineffective counsel, except to the extent the defects complained of caused the plea to be less than knowing and voluntary.

*State v. Milczewski*, 2012-Ohio-1743, ¶ 5 (8th Dist.), quoting *United States v. Broce*, 488 U.S. 563, 574 (1989). However, ineffective assistance of counsel can, under certain circumstances, constitute a "manifest injustice." *See e.g., State v. Montgomery*, 2016-Ohio-2943, ¶ 4 (8th Dist.); *State v. Creech*, 2021-Ohio-3020, ¶ 17 (7th Dist.). Bates has not presented facts or evidence showing a reasonable likelihood this is such a case.

{¶ 35} To establish ineffective assistance of counsel in connection with a guilty plea, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's deficient performance, the defendant would not have pled guilty to the offenses at issue and would have instead insisted on going to trial. *Houk* at ¶ 19-20; *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Xie*, 62 Ohio St.3d 521, 524 (1992); *Hill* at 58-59. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 36} Bates' claim of ineffective assistance of counsel in this case is premised on the Ohio Supreme Court's February 2022 decision in *Bates*, 2022-

Ohio-475. In *Bates*, the Court considered Bates' claims that "the trial court failed to properly impose postrelease control in 2008, rendering that portion of his sentence voidable and subject to the doctrine of res judicata" and that "res judicata precluded the trial court from correcting his sentence in 2018." *Id.* at ¶ 8. "[A]lign[ing]" its decision with its prior decisions in *State v. Harper*, 2020-Ohio-2913, and *State v. Hudson*, 2020-Ohio-3849, the Court held in *Bates* that "[a]n attack on a trial court's imposition of postrelease control in a sentence must be brought on direct appeal or it will be barred by res judicata" and that "[t]his holding applies to the state as well as the defendant." *Bates* at ¶ 32, citing *Harper* at ¶ 42-43, and *Hudson* at ¶ 17-18. "Because res judicata precluded the collateral attack on Bates's sentence," the Court held that "the trial court's 2018 sentencing entry was improper and, therefore, of no effect" and it vacated "the portion of the 2018 sentencing entry imposing postrelease control on Bates." *Bates* at ¶ 32.

{¶ 37} In *Harper*, decided in May 2020, the Ohio Supreme Court held that "[w]hen a case is within a court's subject-matter jurisdiction and the accused is properly before the court, any error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable" — overruling precedent "to the extent that it holds that the failure to properly impose postrelease control in the sentence renders that portion of a defendant's sentence void." *Harper* at ¶ 4, 40. The Court concluded that because the trial court had subject-matter jurisdiction over the case and personal jurisdiction over the defendant, Harper, the trial court's failure to include notice of the consequences of violating postrelease control in the

sentencing entry, as required under *Grimes*, 2017-Ohio-2927, rendered Harper's sentence voidable, not void, and therefore subject to the doctrine of res judicata. *Id.* at ¶ 41. Because Harper could have raised his argument that the trial court had failed to properly impose postrelease control in a direct appeal and did not do so, the argument was barred by res judicata. *Id.*, citing *State v. Were*, 2008-Ohio-5277, ¶ 7, and *State v. Szefcyk*, 77 Ohio St.3d 93, 95 (1996); *see also Harper* at ¶ 43 ("caution[ing] prosecuting attorneys, defense counsel, and pro se defendants throughout this state that they are now on notice that any claim that the trial court has failed to properly impose postrelease control in the sentence must be brought on appeal from the judgment of conviction or the sentence will be subject to res judicata").

{¶ 38} Similarly, in *Hudson*, 2020-Ohio-3849, the trial court failed to include notice of the consequences of violating postrelease control in the defendant's sentencing entry. *Id.* at ¶ 3, 6. The defendant, Hudson, appealed his convictions, but did not raise the issue. The Tenth District affirmed his convictions. More than a decade later, Hudson filed a "motion to vacate and release from postrelease control," asserting that the trial court had failed to properly impose postrelease control and that that part of his sentence was, therefore, void. The trial court denied the motion. *Id.* at ¶ 8.

{¶ 39} The case made its way to the Ohio Supreme Court, which accepted the following proposition of law for review: "Once the underlying prison term has been fully served, a trial court cannot correct the complete failure to reference the

consequences for violating postrelease control in the judgment entry of sentence." *Id.* at ¶ 10. The Court stated that it need not "consider whether Hudson has fully served the sentence that included postrelease control" because his collateral attack on his sentence was barred by res judicata. *Id.* The Court repeated its holding in *Harper*, stating that "any claim that the trial court has failed to properly impose postrelease control in the sentence must be brought on appeal from the judgment of conviction or it will be subject to principles of res judicata." *Id.* at ¶ 18. The Court concluded that because the trial court had jurisdiction over both the case and the defendant, Hudson, any error in imposing postrelease control was an error in the exercise of jurisdiction that "could have been objected to in the trial court and may have been reversible error on direct appeal, but it did not render any part of Hudson's sentence void." *Id.* at ¶ 16. Because Hudson could have raised on appeal his argument that the trial court failed to properly impose postrelease control and failed to do so, res judicata barred his collateral attack on his sentence. *Id.*

{¶ 40} In *Bates*, 2022-Ohio-475, the State was not the only party who failed to challenge the trial court's improper imposition of postrelease control in 2008 in a direct appeal. Bates, likewise, failed to do so. Given that neither Bates nor the State challenged the trial court's improper imposition of postrelease control in a direct appeal, it would seem, based on *Harper* and *Hudson,* that both Bates and the State would have been precluded from later challenging the trial court's improper imposition of postrelease control, i.e., that res judicata would have barred any

collateral attack on the postrelease control portion of Bates' sentence as set forth in

the 2008 sentencing entry.

{¶ 41} However, after discussing its holdings in *Harper* and *Hudson*, the

Court in *Bates* went on to state:

> The trial court's errors in imposing the postrelease control portion of the sentence were to Bates's benefit; without postrelease control properly imposed, his liberty would not be restrained after he served his prison sentence and he would not be under the obligations associated with supervision. . . .
>
> Here, the trial court's errors in imposing postrelease control favored Bates; the state, as the aggrieved party, should have appealed the 2008 entry to correct them. . . .
>
> [T]he trial court here provided deficient notice in 2008 and therefore did not validly impose postrelease control on Bates. Because the trial court failed to validly impose postrelease control in 2008 — a decision that benefited, not aggrieved, Bates — the state should have filed a direct appeal. To say otherwise would be to advocate that Bates, after receiving deficient notice, should filed a direct appeal alerting the appellate court that his postrelease control was not validly imposed as part of his sentence and requesting that it correct said errors in order to ensure that he receive a postrelease control sanction and additional restraint on his liberty. We find this to be a ridiculous suggestion.

*Id.* at ¶ 21-23.

{¶ 42} In *Bates*, the Court expressly "decline[d] to address the effect of the

trial court's improper 2008 imposition of postrelease control on the APA's ability to

supervise Bates." *Id.* at ¶ 31. Bates had argued that because the trial court failed to

advise him at the 2008 sentencing hearing of the consequences of violating

postrelease control, the trial court did not, in fact, impose postrelease control as part

of his sentence and the Adult Parole Authority ("APA") lacked the power to supervise

him. *Id.* at ¶ 26. Bates requested that the Court hold that the trial court's errors in imposing postrelease control in 2008 disqualified him from any postrelease control supervision. *Id.*

{¶ 43} The Court stated that it could not "reach the effect of the trial court's improper 2008 imposition of postrelease control on the APA's ability to supervise Bates today . . . because we do not have the facts or arguments before us with which to resolve the issue." *Id.* at ¶ 27. Although the Court took judicial notice that Bates had been released from prison on the charges at issue in *Bates* and had been convicted of, and sentenced on, new felony offenses in 2019, the Court indicated that there were no facts before it indicating that Bates had been subject to any consequences for postrelease control violations and that it did not know whether Bates' postrelease control was unfavorably terminated by his 2019 convictions or whether he had been subject to any judicial sanction pursuant to R.C. 2929.141. *Id.* at ¶ 28. The Court further indicated that Bates had failed to "provide developed arguments permitting [the Court] to reach this issue," pointing out that former R.C. 2929.19(B)(3)(c) and (e) include language that "explains that errors in postrelease control notice . . . do not 'negate, limit, or otherwise affect' the mandatory period of supervision . . . nor the authority of the parole board to impose a prison term for a violation if 'the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term,'" that it could not "determine the effect of this statute, because we do not know whether the parole board notified Bates prior to his release of its ability to impose a prison term for a violation of

postrelease control" and that "no developed constitutional challenges to this language in former R.C. 2929.19(B)(3)(c) and (e)" were before it. (Emphasis deleted.) *Id.* at ¶ 29.

{¶ 44} Contrary to Bates' assertions, *Bates* did not hold that the imposition of PRC on Bates in 501710 was "unconstitutional," was "void," that Bates was "not on PRC," that "the trial court did not have jurisdiction to sentence [Bates] for PRC," that the trial court did not, in fact, impose postrelease control as part of his sentence in 501710 or that the APA lacked the power to supervise Bates at the time of the charges (or search) at issue here.

{¶ 45} The *Bates* Court held that "[b]ecause res judicata precluded the collateral attack on Bates's sentence, the *trial court's 2018 sentencing entry* was improper and, therefore, of no effect." (Emphasis added.) *Id.* at ¶ 25, 32. "[A]ccordingly," the Court "reverse[d] the Eighth District's decision to the extent it holds otherwise" and "vacate[d] the portion of the 2018 sentencing entry imposing postrelease control on Bates." *Id.* at ¶ 32. It is not at all clear from a reading of *Bates* what effect its holding had on the validity of the APA's postrelease control supervision of Bates in 501710 and any related search of his residence.

{¶ 46} Because no transcripts were included in the record forwarded to this court on appeal, we do not know what information was provided, or what was said, at the change-of-plea hearing that led the trial court to accept Bates' guilty pleas as having been knowingly, intelligently and voluntarily entered. Likewise, there is no information in the record — other than Bates' general, conclusory assertion —

regarding what evidence existed to support the charges against Bates or the source of that evidence, including whether any "warrantless" search was conducted that led to the recovery of evidence used to support the charges against Bates, the basis upon which any such search was conducted and whether any evidence recovered would have been inadmissible if the search was deemed invalid.

{¶ 47} Further, even assuming that Bates was subject to a "warrantless" search, even assuming that some or all of the evidence that supported the charges against Bates was obtained as a result of that search, even assuming Bates was not subject to postrelease control in 501710 and even assuming that the only basis upon which the search could have been lawfully conducted (and the evidence obtained from that search used to convict Bates) was the fact that Bates was on postrelease control, we cannot say that (1) Bates was denied the effective assistance of counsel based on counsel's "failure to investigate" and/or failure to advise Bates that his postrelease control in 501710 was "void" and file a motion to suppress the evidence obtained from the search of his residence or (2) the trial court abused its discretion in denying Bates' postsentence motion to withdraw his guilty pleas.

{¶ 48} At the time Bates entered his guilty pleas in this case in July 2019, it was still the law of this State that "a trial court's failure to validly impose postrelease control rendered the postrelease control portion of the sentence void and subject to correction at any time before the offender's release from prison" — as the trial court did in 2018 in 501710. *See Bates*, 2022-Ohio-475, at ¶ 12, citing *State v. Jordan*, 2004-Ohio-6085. Bates acknowledges this, but asserts that, even though the 2018

sentencing in 501710 predated the Ohio Supreme Court's decisions in *Harper,
Hudson* and *Bates*, "nothing prevented [his] counsel from making the arguments
presented in those cases that would eventually apply to [him]."

{¶ 49} However, trial counsel has no duty to perform a futile act, including
filing a motion to suppress evidence that is not supported by existing law. As this
court explained in *In re L.S.*, 2021-Ohio-3353, ¶ 35 (8th Dist.):

> The failure to file a motion to suppress is not per se ineffective
> assistance of counsel. *See, e.g., State v. Musleh*, 2017-Ohio-8166, ¶ 31
> (8th Dist.); *State v. Watts*, 2016-Ohio-8318, ¶ 17 (8th Dist.), citing
> *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). Rather, a trial
> counsel's failure to file a motion to suppress constitutes ineffective
> assistance of counsel only if there is a reasonable probability that, had
> the motion to suppress been filed, it would have been granted and that
> suppression of the challenged evidence would have affected the
> outcome of the case. *See, e.g., State v. Frierson*, 2018-Ohio-391, ¶ 17
> (8th Dist.); *Musleh* at ¶ 31. Counsel is not required to file a motion to
> suppress if doing so would be a futile act. *See, e.g., Musleh* at ¶ 31; *State
> v. Armstrong*, 2016-Ohio-2627, ¶ 30 (8th Dist.); *State v. Moon*, 2015-
> Ohio-1550, ¶ 28 (8th Dist.) ("'Even if some evidence in the record
> supports a motion to suppress, counsel is still considered effective if
> counsel could reasonably have decided that filing a motion to suppress
> would have been a futile act.'"), quoting *State v. Suarez*, 2015-Ohio-64,
> ¶ 13 (12th Dist.); *State v. Brooks*, 2013-Ohio-58, ¶ 57 (11th Dist.) ("'If
> case law indicates the motion would not have been granted, then
> counsel cannot be considered ineffective for failing to prosecute it.'"),
> quoting *State v. Gaines*, 2007-Ohio-1375, ¶ 17 (11th Dist.); *State v.
> Grimes*, 2011-Ohio-4406, ¶ 30 (8th Dist.) ("[W]here there is no basis
> for the suppression of evidence, defense counsel has no duty to pursue
> a motion to suppress evidence . . . and where the claim of ineffective
> assistance is premised upon the failure to file a baseless motion to
> suppress, such claim must fail."), citing *State v. Gibson*, 69 Ohio
> App.2d 91, 95 (8th Dist. 1980).

*See also State v. White*, 2022-Ohio-2182, ¶ 11 (12th Dist.)

{¶ 50} Likewise, "[t]rial counsel cannot be ineffective for failing to predict and argue future changes in the law." *State v. Driffin*, 2022-Ohio-804, ¶ 9 (8th Dist.), citing *State v. Lucic*, 2009-Ohio-5686, ¶ 5 (8th Dist.); *see also State v. Johnson*, 2024-Ohio-1163, ¶ 32 (8th Dist.). Accordingly, Bates' counsel had (1) no duty to anticipate, at the time Bates entered his guilty pleas, that the Ohio Supreme Court would issue *Harper*, 2020-Ohio-2913, and *Hudson*, 2020-Ohio-3849, and, based on that authority, vacate the postrelease control portion of the 2018 sentencing entry in 501710 in *Bates,* 2022-Ohio-475, (2) no duty to inform Bates of that possibility and (3) no duty to file a motion to suppress, based on such a possibility, that could not have had any reasonable expectation of success unless the law had changed.

{¶ 51} Bates' claims are insufficient to show that he received ineffective assistance of counsel that rendered his guilty pleas unknowing, unintelligent or involuntary. When Bates pled guilty, he made a complete admission that he committed the acts that constituted the offenses of which he was convicted. Bates did not set forth facts in his motion and supporting affidavit that, if true, would have demonstrated a manifest injustice and required the trial court to grant his motion to withdraw his guilty pleas. The trial court, therefore, did not abuse its discretion in denying Bates' postsentence motion to withdraw his guilty pleas without an evidentiary hearing. *See, e.g., Houk,* 2021-Ohio-2107, at ¶ 38; *see also State v. Vihtelic*, 2017-Ohio-5818, ¶ 29 (8th Dist.) (where defendant did not allege any facts that could reasonably support the conclusion that withdrawal of his guilty plea was

necessary to correct a manifest injustice, trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty pleas without a hearing).

{¶ 52} We overrule Bates' assignments of error.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR