[Cite as *State v. White*, 2022-Ohio-2182.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2021-05-007 |
| | | CA2021-05-008 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 6/27/2022 |
| LYLE C. WHITE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20200071

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price, Assistant Prosecuting Attorney, for appellee.

Shannon Marie Treynor, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Lyle C. White, appeals from his conviction in the Madison County Court of Common Pleas after a jury found him guilty of one count of second-degree felony aggravated possession of drugs. For the reasons outlined below, we affirm White's conviction.

**Facts and Procedural History**

{¶ 2} On November 13, 2020, the Madison County Grand Jury returned an indictment charging White with one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony in accordance with R.C. 2925.11(C)(1)(c). Pursuant to that statute, "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." The charge arose after White was discovered in possession of over 20 grams of methamphetamine on the morning of May 22, 2020 following a traffic stop of a vehicle in which he had been a passenger sitting in the vehicle's front passenger seat. The matter proceeded to a one-day jury trial on April 26, 2021. There is no dispute that White's trial counsel did not file a motion suppress prior to trial.

{¶ 3} At trial, the uncontested testimony established that on the morning in question, May 22, 2020, White had been a front-seat passenger in a vehicle that was the subject of a constitutionally permissible traffic stop initiated by London Police Department Sergeant Donovan Cooper and Madison County Sheriff's Office Chief Deputy Eric Semler. The record indicates this traffic stop was initiated by Sergeant Cooper and Deputy Semler given their previous dealings with the vehicle's driver, J.B., and Sergeant Cooper's and Deputy Semler's personal knowledge that J.B. had an outstanding warrant for his arrest originating out of Logan County, Ohio.

{¶ 4} Sergeant Cooper testified that once the traffic stop was initiated, the vehicle's passenger door opened and White, who at that time was wearing a gray hooded sweatshirt, began to exit from the vehicle. However, before White could make his exit from the vehicle, the record indicates Deputy Semler approached the vehicle's passenger side door and contacted White. Deputy Semler testified that after contacting White at the vehicle's passenger side door that he then "started a conversation" with White. As a part of this

conversation, Deputy Semler testified that he asked White, "Do you have any drugs on you?" To this, Deputy Semler testified, "I don't know that [White] says yes, but he nods his head and he looks down at the * * * front pouch pocket of his hoodie."

{¶ 5} Deputy Semler testified that White then began to reach his hands down into the front pouch pocket of his sweatshirt. However, upon seeing White begin to reach towards his front sweatshirt pocket, Deputy Semler testified that he "asked [White] not to reach into his pocket for officer safety." Deputy Semler testified he then asked White, "is it in your pocket?" The record indicates White responded affirmatively. Deputy Semler testified that he then reached into the front pouch pocket of White's sweatshirt and located a "hard sunglasses case." Deputy Semler testified that he then removed the hard sunglasses case from White's front sweatshirt pocket and asked White "if there was narcotics in it," to which Deputy Semler testified that White responded, "yeah."

{¶ 6} Deputy Semler testified that he then handed the hard sunglasses case to Sergeant Cooper who was at that time just "coming around on the other side of the car." When asked why he suspected the hard sunglasses case contained narcotics, Deputy Semler testified:

> Because I asked [White] if there was – I don't know whether I said dope or drugs. I'm not sure the phrase I used, and [White] indicated to me, yeah. That's when I handed it to Sergeant Cooper and said, hey, there's drugs in this.

Deputy Semler testified that White was then placed under arrest and put into the back of a London Police Department cruiser that had since arrived at the scene for backup.

{¶ 7} Sergeant Cooper also testified and described Deputy Semler's contact with White and what transpired after Deputy Semler's contact with White concluded. In so doing, Sergeant Cooper initially testified:

> I heard [Deputy Semler and White] talking. [Deputy Semler] was

- 3 -

speaking with Mr. White and having back and forth conversation. I see [Deputy Semler] patting down Mr. White; and that's when I went over to assist him thinking that, you know, maybe [Deputy Semler] had something that he needed help with [and] he didn't have a backup unit on his side yet.

Sergeant Cooper testified that Deputy Semler then handed him the hard sunglasses case and told him "there was probably narcotics in it."

{¶ 8} Sergeant Cooper testified that he then "looked down on the passenger's seat" where White had been sitting and saw "a snus tobacco can sitting on the seat, on top of the seat." Sergeant Cooper testified that he then removed the snus tobacco can from the vehicle and took it, along with the hard sunglasses case given to him by Deputy Semler, back to his unmarked car and laid them out on the hood. Sergeant Cooper testified that he then opened the snus tobacco can and hard sunglasses case and discovered what "appeared to be narcotics," specifically, methamphetamine. Sergeant Cooper testified that he then "closed everything – put everything back where it was, closed it up, put it in a bag and took it to [his] office." The record indicates the substances located inside the snus tobacco can and hard sunglasses case, as well as the substance discovered in a packet of cigarettes located during the subsequent search of the vehicle in which White had been a passenger, were found to be over 20 grams of methamphetamine.

{¶ 9} After both parties rested, and following the trial court's final jury instructions, the jury was excused from the courtroom to begin its deliberations. Following its deliberations, the jury then returned to the courtroom and issued its verdict finding White guilty as charged. This included the jury making an explicit finding the methamphetamine discovered in White's possession exceeded five times bulk amount, but less than 50 times the bulk amount. Following the jury's verdict, the trial court proceeded to sentencing and sentenced White to an indefinite sentence of a mandatory minimum five years in prison with

a maximum possible term of seven-and-one-half years in prison. The trial court also ordered White to pay a fine of $7,500 plus court costs. The trial court further notified White that he would be subject to a mandatory three-year postrelease control term following his release from prison.

**White's Appeal and Single Assignment of Error**

{¶ 10} White now appeals from his aggravated possession of drugs conviction, raising a single assignment of error for review. In that single assignment of error, White argues he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress the methamphetamine discovered in his possession during the constitutionally permissible traffic stop discussed more fully above. This is because, according to White, had his trial counsel filed a motion to suppress the methamphetamine that this "very probably" would have resulted in the "seized evidence having been excluded as improperly obtained." We disagree.

**Applicable Ineffective Assistance of Counsel Standard**

{¶ 11} "The failure to file a motion to suppress is not per se ineffective assistance of counsel." *State v. Fluhart*, 12th Dist. Clermont No. CA2020-12-068, 2021-Ohio-3560, ¶ 52, citing *State v. Pennington*, 12th Dist. Warren No. CA2006-11-136, 2007-Ohio-6572, ¶ 15. Rather, "[t]o establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must be able to prove that there was a basis for suppression of the evidence in question." *State v. Satterwhite*, 12th Dist. Warren No. CA2020-09-063, 2021-Ohio-2878, ¶ 37, citing *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. "Thus, the failure to file a motion to suppress 'signifies ineffective assistance of counsel only when the record establishes that the motion would have been successful if made.'" *State v. Hunt*, 12th Dist. Fayette Nos. CA2021-02-003 thru CA2021-02-007, 2021-Ohio-3400, ¶ 35,

quoting *State v. Kelly*, 12th Dist. Butler No. CA2006-01-002, 2007-Ohio-124, ¶ 25. But, "even when there is some evidence in the record to support a motion to suppress, 'an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile.'" *State v. DeHart*, 12th Dist. Warren No. CA2018-06-060, 2019-Ohio-1048, ¶ 10, quoting *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

**White's Arguments and Analysis**

{¶ 12} To support his ineffective assistance of counsel claim, White argues it was a violation of his Fourth Amendment rights for Deputy Semler to approach and contact him at the vehicle's passenger's side door following the constitutionally permissible traffic stop of the vehicle in which White was a passenger. White also argues it was a violation of his Fourth Amendment rights for Deputy Semler to ask if he had any drugs on his person during the first few moments of that encounter. This is because, according to White, this encounter was akin to an investigative stop, also known as a *Terry* stop, that required Deputy Semler to possess a reasonable suspicion based on specific and articulable facts that White was, or had been, engaged in some type of criminal activity.

{¶ 13} However, when considering Deputy Semler could have simply asked White to get out of the vehicle pending the completion of that traffic stop, we fail to see how White's Fourth Amendment rights were violated by Deputy Semler approaching and contacting White immediately after the constitutionally permissible traffic stop of a vehicle in which White was a passenger. *See Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882 (1997) ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"). We also fail to see how White's Fourth Amendment rights were violated by Deputy Semler simply asking White if he had any drugs on his person. This is

because, as noted by the United States Supreme Court, Deputy Semler could have asked White questions completely unrelated to the reason for the traffic stop so long as the questions did not "measurably extend the duration of the stop."  *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781 (2009).  There is no indication that occurred here.

{¶ 14} For these reasons, we disagree with White's claim that his trial counsel was ineffective for failing to file a motion to suppress the methamphetamine discovered in his possession.  We instead find White's trial counsel reasonably could have determined that filing a motion to suppress in this case would have been a futile or frivolous act.  An attorney is not ineffective for failing to make a futile or frivolous request.  *See State v. Harrop*, 12th Dist. Fayette No. CA2005-12-036, 2006-Ohio-6080, ¶ 14 ("[a]n attorney is not ineffective for failing to make futile requests"); *see, e.g., State v. Frazier*, 12th Dist. Butler No. CA96-02-023, 1996 Ohio App. LEXIS 5218, *7-*8 (Nov. 25, 1996) (appellant did not receive ineffective assistance of counsel where this court found "no error by defense counsel in failing to file a motion to suppress this evidence because any such motion would have been frivolous").  White's claim otherwise lacks merit.

## Conclusion

{¶ 15} For the reasons outlined above, and finding no merit to any of the arguments raised by White herein, White's single assignment of error lacks merit and is overruled.

{¶ 16} Judgment affirmed.


HENDRICKSON and BYRNE, JJ., concur.