[Cite as *State v. Lindsey*, 2024-Ohio-5244.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-01-001 |
| | : | O P I N I O N |
| - vs - | | 11/4/2024 |
| | : | |
| CARL G. LINDSEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case Nos. CRI 97-2015 and 97-2064

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Carol A. Wright and Herman Carson, for appellant.

**PIPER, J.**

{¶ 1} Appellant, Carl G. Lindsey, appeals the decision of the Brown County Court of Common Pleas dismissing his most recent petition for postconviction relief ("PCR"). For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} During the early morning hours of February 10, 1997, Lindsey shot and killed Donald Ray "Whitey" Hoop outside of Slammers Bar located near Mt. Orab in Brown

County, Ohio. Following the shooting, Lindsey was indicted for Whitey's murder and, after a jury trial, was found guilty and sentenced to death. On appeal, the Ohio Supreme Court affirmed the jury's verdict and death sentence. *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465. In so holding, the Ohio Supreme Court noted the evidence supporting the jury's verdict was overwhelming and that:

> the evidence shows that [Lindsey] stated he would kill Whitey, that he was seen standing near [Whitey's] dead body, that police found [Lindsey] shortly after the shooting soaking [Lindsey's] bloodstained clothing in a bathroom that also contained Whitey's wallet and the same type of gun that killed Whitey, and that [Lindsey's] truck was heavily stained with blood consistent with Whitey's.

*Id.* at 484.

{¶ 3} Given this evidence, the Ohio Supreme Court determined that "the jury neither lost its way nor created a manifest miscarriage of justice in convicting [Lindsey] of aggravated murder." *Id.* The Ohio Supreme Court also determined that, when reviewing the mitigating evidence related to Lindsey's death sentence, "there can be nothing mitigating about volunteering to murder someone's husband, shooting the victim twice in the head at close range, and taking his wallet." *Id.* at 492.

{¶ 4} On September 21, 1998, Lindsey filed with the trial court his first petition for PCR. The trial court denied Lindsey's petition and this court affirmed. *State v. Lindsey*, 2003-Ohio-811 (12th Dist.). In so holding, this court noted that, after reviewing each of the exhibits that Lindsey had filed in support of his petition, which included, among other things, supporting affidavits, documentary evidence, the indictment, journal entries, and various transcripts of the proceedings, that Lindsey had:

> failed to meet his burden to show that the evidence is more than marginally significant or that it advances his claim beyond a mere hypothesis that the result would be different if this evidence had been submitted at trial.

*Id.* at ¶ 23.

**{¶ 5}** On April 3, 1999, Lindsey filed with the trial court a motion seeking leave to file a motion for a new trial. Just as with his initial petition for PCR, the trial court denied Lindsey's motion and this court affirmed. *State v. Lindsey*, 2004-Ohio-4407 (12th Dist.). Several years later, on October 10, 2003, Lindsey filed a petition for a writ of habeas corpus in the federal district court. Following years of amendments to his petition, as well as the withdrawal of certain other claims, the federal district court denied Lindsey's habeas corpus petition. *Lindsey v. Warden, Chillicothe Corr. Inst.*, S.D. Ohio No. 1:03-cv-702, 2020 U.S. Dist. LEXIS 244944 (Dec. 30, 2020).

**{¶ 6}** Lindsey sought reconsideration of the denial of his petition for habeas corpus and leave to further amend his habeas corpus petition. In so doing, Lindsey included an argument regarding alleged "newly discovered evidence" of his Fetal Alcohol Syndrome Disorder ("FASD") diagnosis.[1] Lindsey also included an argument alleging that he was denied effective assistance of counsel based on his trial counsel's failure to investigate whether he was suffering from FASD "despite the presence of red flags." Lindsey further moved the federal district court to include other grounds for relief based on alleged "newly discovered evidence that Mr. Lindsey's trial, appellate, and post-conviction counsel all rendered ineffective assistance by failing to timely communicate multiple plea offers from the Brown County Prosecutor's Office, and that Mr. Lindsey's death sentence is unconstitutional as a result."

**{¶ 7}** Lindsey's various motions for reconsideration and for leave to amend were

---

1. As set forth within the record, specifically, the expert report of Dr. Julian K. Davis, a defense expert who agreed to evaluate Lindsey to determine whether he suffers from birth defects and/or neurologic impacts normally associated with FASD, "FASD is an umbrella term used to describe the spectrum of birth defects and neurologic impacts caused by maternal alcohol consumption during pregnancy." Dr. Davis opined that Lindsey has FASD in the form of "Sentinel Physical Findings / Neurobehavioral Disorder / Alcohol Exposed," which "describes a pattern of physical features and brain dysfunction associated with prenatal alcohol exposure," and is "close to a CDC diagnosis" of "full" fetal alcohol syndrome.

ultimately denied by the federal district court. *Lindsey v. Warden, Chillicothe Corr. Inst.*, S.D. Ohio No. 1:03-cv-702, 2021 U.S. Dist. LEXIS 134558 (July 20, 2021). Lindsey appealed the federal district court's decision to the federal appeals court, which the federal appeals court subsequently denied by refusing to issue Lindsey with a certificate of appealability. *Lindsey v. Jenkins*, 2022 U.S. App. LEXIS 37905 (6th Cir. Dec. 1, 2022).

{¶ 8} On July 14, 2020, Lindsey filed an untimely, second or successive petition for PCR. Lindsey filed this petition pursuant to R.C. 2953.21 and 2953.23. To support his petition, just as he did in the federal district and appellate courts, Lindsey claimed that he had "newly discovered evidence" that he suffers from FASD and that his prior counsel was ineffective for not investigating whether he had FASD. Lindsey also alleged that his death sentence was unconstitutional given the breakdown in communication between himself and prior counsel regarding certain of the state's alleged plea offers. This was in addition to Lindsey alleging that "new evidence from an expert in bloodstain pattern analysis demonstrates" that the bloodstain expert who testified at his trial, Dr. Timothy McKinley, the Brown County Coroner, "was unqualified to render his opinion on bloodstain pattern evidence."

{¶ 9} On July 18, 2022, the trial court summarily dismissed Lindsey's petition for PCR without holding a hearing on the matter. In so doing, the trial court determined that:

> (1) Lindsey's claims were barred by the doctrine of res judicata;
>
> (2) Lindsey had failed to show that he was unavoidably prevented from discovering the facts upon which his claims were based;
>
> (3) Lindsey had failed to show, by clear and convincing evidence, that constitutional error existed at trial or at sentencing; and
>
> (4) Lindsey had failed to show, by clear and convincing evidence, that even if constitutional error existed at trial or

- 4 -

sentencing, no reasonable fact finder would have found him guilty of murder or imposed the death penalty.

{¶ 10} Lindsey appealed the trial court's decision to this court, raising 11 assignments of error for review. However, rather than addressing the merits of Lindsey's 11 assignments of error, this court instead reversed and remanded the matter to the trial court. On remand, we instructed the trial court to address the "threshold question" of whether Lindsey had ever satisfied the jurisdictional requirements to bring an untimely, second or successive petition for PCR under R.C. 2953.23(A)(1). *State v. Lindsey*, 2023-Ohio-1846 (12th Dist.). Pursuant to that statute, the trial court may not entertain an untimely filed petition, or a second or successive petition, unless both of the following apply:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 11} Upon remand, the trial court determined that Lindsey had not satisfied either of those two jurisdictional requirements, thus necessitating Lindsey's untimely, second or successive petition for PCR be dismissed for lack of jurisdiction. The trial court did this in a decision issued on December 27, 2023. In so doing, the trial court determined that R.C. 2953.23(A)(1)(b) imposed the "most obvious and serious impediments" to Lindsey's

ability to bring his untimely, second or successive PCR petition. The trial court stated that this was because, even were it to assume the errors that Lindsey had raised were constitutional, Lindsey had nevertheless "failed to show by clear and convincing evidence that the reasonable fact finder would not have found him guilty anyway and would not have recommended the death penalty." Explaining why that was, the trial court stated:

> The [Ohio] Supreme Court's description of the circumstances of the offense sets forth overwhelming evidence of guilt and aggravating factors. [Lindsey] was at the scene of the murder. He told Joy Hoop[, the victim's wife, that] he would kill her husband for her. He accepted the gun from Hoop and left the bar. Kathy Kerr saw the victim laying on the ground covered in blood. [Lindsey] was standing outside the bar by the door.
>
> [Lindsey] followed Kerr home and took a shower there. Deputy Moor[e, a deputy with the Brown County Sheriff's Office,] entered the Kerr residence and saw [Lindsey] in Kerr's bathroom soaking his clothes in a tub of red tinted water. The deputy also found a box of .22 caliber ammunition on the sink. Upon search of Kerr's residence, police found [Lindsey's] wallet, the ammunition, his clothing, the gun, and the victim's wallet. The victim's wallet was empty but officers found $1,257 in [Lindsey's] wallet.
>
> Blood stains found on [Lindsey's] jacket, jeans, boot, truck console, steering wheel cover, driver's seat, driver's door, and handle all were consistent with the victim's blood.

Therefore, given the overwhelming evidence of Lindsey's guilt, the trial court concluded that it did not, and could not, have "firm belief or conviction" that any of the alleged errors raised by Lindsey within his PCR petition "would change the mind of any reasonable fact finder" as to his guilt or his qualification for the death penalty under R.C. 2953.23(A)(1)(b).

{¶ 12} The trial court also determined that Lindsey had failed to satisfy the requirements of R.C. 2953.23(A)(1)(a). In so holding, the trial court initially stated with respect to Lindsey's argument that he was unavoidably prevented from discovering that he suffers from FASD given his mother's heavy drinking while she was pregnant with him, such claim "is not new and was discovered before his first petition" for PCR was filed on

September 21, 1998. The trial court found the same to be true regarding Lindsey's claims related to the so-called "bloodstain pattern evidence," as well as Lindsey's claim that he received ineffective assistance of counsel based upon his previous counsels' alleged failure to communicate the state's various plea offers to him. The trial court instead found, based upon the evidence that it found credible, that such evidence was "not new and was known to [Lindsey] at or before trial. He was not unavoidably prevented from discovering it." This is in addition to the trial court finding "[t]he state's withdrawal of a plea offer is not a constitutional error" upon which Lindsey could base his petition as "[t]he withdrawal did not constitute error," constitutional or otherwise.

**Lindsey's Appeal and Seven Assignments of Error**

{¶ 13} On January 26, 2024, Lindsey filed an appeal from the trial court's decision. Following briefing, oral argument was held before this court on October 7, 2024. Lindsey's appeal now properly before this court for decision, Lindsey has raised seven assignments of error for review.

*Rule of Law for an Untimely or Second or Successive Petition for PCR*

{¶ 14} There is no dispute that Lindsey's petition for PCR at issue in this case was an untimely, second or successive PCR petition. "A trial court does not have subject-matter jurisdiction to adjudicate a postconviction petition that is untimely—i.e., filed outside the statutory deadline under R.C. 2953.21(A)(2) or successive—i.e., a second or subsequent petition." *State v. Johnson*, 2024-Ohio-134, ¶ 10. There are two exceptions to this jurisdictional bar, however. *Id.* One of those two exceptions—the one relevant to this appeal—is found in R.C. 2953.23(A)(1). As noted above, pursuant to that statute, a trial court may not entertain an untimely filed petition, or a second or successive petition, unless both of the following apply:

(a) Either the petitioner shows that the petitioner was

unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 15} Therefore, given the plain language of the statute, for the trial court to have subject-matter jurisdiction to consider Lindsey's petition for PCR at issue in this case, Lindsey was required to show (1) that he was "unavoidably prevented" from discovering the facts upon which his claims rely and (2) that, by clear and convincing evidence, but for constitutional error at his trial or at his sentencing hearing, no reasonable factfinder would have found him guilty or eligible for the death penalty. *See State v. Apanovitch*, 2018-Ohio-4744, ¶ 25. A petitioner like Lindsey must satisfy both of those requirements before the trial court may entertain the petitioner's petition. *Johnson*, 2024-Ohio-134, ¶ 12.

{¶ 16} "R.C. 2953.23[A][1][a] puts the onus on the petitioner to show that he was unavoidably prevented from discovering the facts on which his petition relies." *Id.* at ¶ 13. Specifically, R.C. 2953.23(A)(1)(a) requires "the petitioner show[] that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely . . . ." "R.C. 2953.23(A)(1)(a) requires a petitioner to show that he was 'unavoidably prevented'—not merely 'prevented'—from discovering the facts on which he would rely." *Id.* at ¶ 24. "Unavoidable" means "not avoidable" or "inevitable." *Merriam-Webster's*

*Collegiate Dictionary* 1360 (11th Ed.2003). And something is "inevitable" if it is "incapable of being avoided or evaded." Id. at 638. Therefore, "[k]eeping in mind that R.C. 2953.23[A][1][a] means what it says, a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was 'incapable of being avoided or evaded.'" *Johnson* at ¶ 24, quoting *Merriam-Webster's Collegiate Dictionary* at 638.

{¶ 17} R.C. 2953.23(A)(1)(b) similarly puts the onus on the petitioner to show, by clear and convincing evidence, that "constitutional error at trial" was the "but for" cause of his conviction. *Id.* at ¶ 31. Accordingly, it is not just any error, but "constitutional error" that is required. *See id.* at ¶ 33 (noting that "perjury is not a constitutional error" that can be used to satisfy the "but for" cause requirements). This could include, for example, a deprivation of the petitioner's constitutional right to due process.

*De Novo Standard of Review*

{¶ 18} "[W]hether a trial court has subject-matter jurisdiction to entertain an untimely, second, or successive petition for postconviction relief is a question of law, which we review de novo." *State v. Hattan*, 2022-Ohio-3991, ¶ 38. "De novo means this court will afford no deference to the trial court's decision." *State v. Dean*, 2022-Ohio-3105, ¶ 27 (12th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

**Assignment of Error No. 1:**

{¶ 19} THE TRIAL COURT ERRED AND VIOLATED LINDSEY'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS BY FINDING HE DID NOT MEET THE JURISDICTIONAL REQUIREMENTS OF OHIO REVISED CODE SECTION 2953.23(A)(1)(a) AFTER CONCLUDING THAT LINDSEY'S FASD DIAGNOSIS IS NOT NEW EVIDENCE AND THAT IT WAS PREVIOUSLY DISCOVERED.

{¶ 20} In his first assignment of error, Lindsey argues the trial court erred by finding

the evidence he presented to establish his FASD diagnosis was not "newly discovered evidence" under R.C. 2953.23(A)(1)(a). However, just as the trial court found, the evidence used to establish Lindsey's FASD diagnosis was based primarily on the affidavits Lindsey used to support his original petition for PCR that was filed with the trial court over 25 years ago on September 21, 1998. The record is, in fact, chock full of references to the troubles that Lindsey's family had with alcohol and the effect that alcohol abuse had on Lindsey as a child. This included reports that Lindsey's mother drank heavily while she was pregnant with Lindsey and his siblings.[2]

{¶ 21} Lindsey bore the burden of showing that he was "unavoidably prevented" from discovering the evidence used to establish his FASD diagnosis. Therefore, because R.C. 2953.23 means what it says, "a petitioner filing an untimely postconviction petition must show that any delay in discovering the facts undergirding the petition was 'incapable of being avoided or evaded.'" *Johnson*, 2024-Ohio-134 at ¶ 24, quoting *Merriam-Webster's Collegiate Dictionary* 638 (11th Ed.2003).

{¶ 22} Lindsey could have done this either by establishing a *Brady* violation, "or by demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence."[3] *Id.* at ¶ 18. Lindsey did not make either showing in this case. Accordingly, given the record properly before this court, the trial court did not err by finding the evidence that Lindsey presented

---

2. A psychological evaluation of Lindsey, which was part of his original PCR petition filed with the trial court on September 21, 1998, includes a note indicating Lindsey's mother "reportedly drank heavily during all her pregnancies," and that his siblings birth defects were "thought to be related to their mother's heavy alcohol use during her pregnancies." This is in addition to that same evaluation noting the one consistent factor for Lindsey throughout his life has been "alcohol and substances of abuse," which began with his mother's "having drinking during her pregnancies and the probable resulting birth defects in her children . . . ."

3. A violation of *Brady* refers to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), "a case in which the United States Supreme Court held that prosecutors have a duty to disclose potentially exculpatory evidence to criminal defendants." *State v. Harding*, 2023-Ohio-753, ¶ 4, fn. 1 (12th Dist.).

to the court to establish an FASD diagnosis was not "newly discovered evidence" under R.C. 2953.23(A)(1)(a). Lindsey's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

**{¶ 23}** THE TRIAL COURT ERRED AND VIOLATED LINDSEY'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS BY FAILING TO ANALYZE WHETHER LINDSEY MET THE JURISDICTIONAL REQUIREMENTS OF OHIO REVISED CODE SECTION 2953.23(A)(1)(b) BASED ON A CONSTITUTIONAL ERROR AT HIS SENTENCING HEARING.

**{¶ 24}** In his second assignment of error, Lindsey argues the trial court erred by allegedly failing to analyze under R.C. 2953.23(A)(1)(b) whether the evidence he presented to establish his FASD diagnosis could have caused a reasonable factfinder to find him ineligible for the death sentence. Although not specific, Lindsey seems to be challenging the trial court's decision finding "any alleged error" that Lindsey may have asserted would not have changed "the mind of any reasonable fact finder as to [his] guilt or his qualification for the death penalty." However, while the trial court may not have been that direct in its analysis, the trial court did expressly state that, even if it were to assume the errors that Lindsey had raised within his petition were constitutional, Lindsey had "failed to show by clear and convincing evidence that the reasonable fact finder would not have found him guilty anyway and would not have recommended the death penalty."

**{¶ 25}** The trial court reached this decision based upon the overwhelming evidence presented to support Lindsey's guilt at trial. Summarizing this evidence, the trial court stated:

> [Lindsey] told witnesses that he would kill the victim. He was standing outside the bar [where] the victim's body was found in the parking lot. He was found in Kerr's bathroom soaking bloody clothes. The victim's wallet and the gun were found in the same bathroom. His clothing and truck were copiously

- 11 -

stained with the victim's blood. The gun was stained with the victim's blood and was the same type of gun that killed him.

Therefore, despite Lindsey's assertions otherwise, the trial court did not err by finding "any alleged error" that Lindsey may have asserted would not have changed "the mind of any reasonable fact finder as to [his] guilt or his qualification for the death penalty" under R.C. 2953.23(A)(1)(b). Accordingly, Lindsey's second assignment of error also lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 26} THE TRIAL COURT ERRED AND VIOLATED MR. LINDSEY'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS WHEN FINDING HE DID NOT MEET THE JURISDICTIONAL REQUIREMENTS OF OHIO REVISED CODE SECTION 2953.23 FOR HIS BLOODSTAIN PATTERN EVIDENCE.

{¶ 27} In his third assignment of error, Lindsey argues the trial court erred by finding the so-called "bloodstain pattern evidence" that he presented to the trial court when arguing, as part of his petition for PCR, that the state's expert witness, Dr. McKinley, the Brown County Corner, was not qualified to testify at trial as an expert on blood spatter and/or the place when Whitey's body was positioned at the time he suffered a second gunshot wound to the head, was not "newly discovered evidence" under R.C. 2953.23(A)(1)(a). However, just as the trial court found:

> [Lindsey's trial counsel] strenuously argued that the state's expert at trial was not qualified as a general practitioner to testify about blood spatter or the position of the victim's body. The qualification of the state's expert was raised at the trial and in the first petition for postconviction relief. [Lindsey's] post-conviction counsel even admits that she was aware of this issue and requested funding for an expert.

{¶ 28} The trial court therefore concluded that "[t]his is not a new issue and [Lindsey] was not unavoidably prevented from discovery of these facts." We find no error

- 12 -

in the trial court's decision. This is particularly true here when considering, as we discuss more fully below, this alleged error could not be considered a constitutional error. Accordingly, given the record properly before this court, the trial court did not err by finding the so-called "bloodstain pattern evidence" that Lindsey presented to the court was not "newly discovered evidence" under R.C. 2953.23(A)(1)(a). For these reasons, Lindsey's third assignment of error likewise lacks merit and is overruled.

**Assignment of Error No. 4:**

{¶ 29} THE TRIAL COURT ERRED BY HOLDING THAT R.C. 2953.23 LIMITS REVIEW TO CONSTITUTIONAL ERRORS AT TRIAL AND SENTENCING.

{¶ 30} In his fourth assignment of error, Lindsey argues the trial court erred by finding the PCR statute, R.C. 2953.23, limits its review of untimely and second or successive PCR petitions to constitutional errors that occurred either at trial or, if the claim challenges the imposition of a death sentence, at the sentencing hearing. But, given the plain language set forth in the statute, and more specifically, R.C. 2953.23(A)(1)(b), we find no such error occurred in this case.

{¶ 31} Again, as that subsection clearly states, the trial court may not entertain an untimely filed petition or a second or successive petition unless, in addition to the requirements set forth in R.C. 2953.23(A)(1)(a), subsection (b) states:

> The petitioner shows by clear and convincing evidence that, *but for constitutional error at trial*, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, *but for constitutional error at the sentencing hearing*, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(Emphasis added.)

{¶ 32} "Postconviction relief is not a constitutional right; instead, it is a narrow remedy that gives the petitioner no more rights than those granted by statute." *State v.*

- 13 -

*Simon*, 2024-Ohio-95, ¶ 9 (4th Dist.). "This means that 'any right to postconviction relief must arise from the statutory scheme enacted by the General Assembly.'" *Id.*, quoting *Apanovitch*, 2018-Ohio-4744 at ¶ 35. This holds true even for those petitioners who, like Lindsey in this case, are facing the death penalty. *See State v. Lawson*, 2014-Ohio-3554, ¶ 46 (12th Dist.) ("[a]lthough the petitioner's life is at stake in postconviction proceedings for capital defendants, we must acknowledge that postconviction review is not a constitutional right, and accordingly a petitioner receives no more rights than those granted by statute"). Therefore, given the plain language set forth in R.C. 2953.23(A)(1)(b), Lindsey's fourth assignment of error lacks merit and is overruled.

**Assignment of Error No. 5:**

{¶ 33} THE TRIAL COURT ERRED IN FAILING TO CONSIDER WHETHER TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR'S WITHDRAWAL OF THE INITIAL PLEA OFFER.

{¶ 34} In his fifth assignment of error, Lindsey argues the trial court erred by failing to consider whether his trial counsel were ineffective for not objecting to the state's "arbitrary" withdraw of its initial plea offer.[4] However, when Lindsey did not immediately accept the state's plea offer, whether the state would hold that offer open to a later date was left up to the state and rested within the state's sole discretion. *See, e.g., Ohio v. Lane*, 2022-Ohio-3775, ¶ 71-73 (3d Dist.) (finding the state did not breach an enforceable plea agreement where, although rescinding the offer may have been done in "poor form" given the defendant had verbally accepted the offer, the offer was nevertheless withdrawn by the state before the agreement had an opportunity to be accepted by the trial court).

---

4. We note that, although Lindsey's briefs refer to several other plea offers being made, the assignment of error as presented to this court directs our attention solely to the *initial* plea offer being made prior to trial, not any plea offer that may have occurred thereafter. This court is tasked with determining just the assignments of error raised. "Appellate courts review assignments of error—we sustain or overrule only assignments of error and not mere arguments." *State v. Harlow*, 2014-Ohio-864, ¶ 10 (4th Dist.).

Therefore, any objection that Lindsey's trial counsel may have made to the state withdrawing its initial plea offer would have been futile. "An attorney is not ineffective for failing to make a futile or frivolous request." *State v. White*, 2022-Ohio-2182, ¶ 14 (12th Dist.). "Trial counsel is [also] not ineffective for failing to make a futile argument." *State v. Trafton*, 2023-Ohio-122, ¶ 29 (12th Dist.). The existence of the state's initial plea offer—an offer that was made prior to trial—was likewise not "newly discovered evidence" under R.C. 2953.23(A)(1)(a). Accordingly, for these reasons, Lindsey's fifth assignment of error lacks merit and is overruled.

**Assignment of Error No. 6:**

{¶ 35} THE TRIAL COURT FAILED TO ADDRESS WHETHER THE PROSECUTOR'S OFFER OF A SENTENCE LESS THAN DEATH IS NOT AN ADMISSION THAT A SENTENCE LESS THAN DEATH IS APPROPRIATE.

{¶ 36} In his sixth assignment of error, Lindsey argues the trial court erred by failing to take into consideration the state's initial plea offer did not include the death penalty. This, according to Lindsey, serves as an "admission" by the state that sentencing Lindsey to death was not appropriate. Preliminarily, we note that Lindsey cites no legal authority that the trial court had an obligation to address a plea offer never accepted. Moreover, it was not up to the state to sentence Lindsey; what sentence Lindsey would receive was instead left to the trial court. Given the jury's recommendation of death, this included the trial court sentencing Lindsey to the death penalty. Nothing about Lindsey being sentenced to death, despite the state having previously offered Lindsey a lesser sentence, renders either the jury's guilty verdict or the trial court's death sentence unconstitutional. To the extent Lindsey claims otherwise, such argument lacks merit. Therefore, for these reasons, Lindsey's sixth assignment of error is overruled.

**Assignment of Error No. 7:**

{¶ 37} THE TRIAL COURT ERRED BY DISMISSING LINDSEY'S POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT DISCOVERY AND AN EVIDENTIARY HEARING.

{¶ 38} In his seventh assignment of error, Lindsey argues the trial court erred by dismissing his petition without first holding an evidentiary hearing on the matter. We disagree.

{¶ 39} "An evidentiary hearing is not automatically guaranteed each time a defendant files a petition for postconviction relief." *State v. Harding*, 2020-Ohio-1067, ¶ 5 (12th Dist.). "A trial court properly denies a postconviction relief petition without a hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Harris*, 2020-Ohio-4101, ¶ 15 (12th Dist.). "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *State v. Blanton*, 2022-Ohio-3985, ¶ 24. "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing will not be reversed absent an abuse of discretion." *Harding*, 2020-Ohio-1067 at ¶ 6. "The standard is deferential, requiring the trial court to engage in more than mere error in law or judgment." *State v. Jones*, 2022-Ohio-3864, ¶ 9 (12th Dist.). We must instead "find that the trial court's ruling was unreasonable, arbitrary, or unconscionable." *State v. Payton*, 2022-Ohio-2829, ¶ 7 (12th Dist.).

{¶ 40} Here, the supporting affidavits, documentary evidence, files, and the records of the case affirmatively disprove each of Lindsey's claims. This includes

Lindsey's claims related to the impact an FASD diagnosis may have had on a reasonable juror tasked with determining his guilt and/or whether a recommendation of death was appropriate. This also includes Lindsey's claims underlying the so-called "bloodstain pattern evidence," as well as Lindsey's claim that he received ineffective assistance of counsel based upon his counsels' alleged failures to communicate the state's various plea offers to him. Therefore, following a thorough review of the record, which includes a review of each of the 40 exhibits Lindsey filed in support of his PCR petition, we find no error in the trial court's decision to dismiss Lindsey's untimely and second or successive petition without first holding an evidentiary hearing on the matter. Accordingly, finding no merit to any of the arguments raised by Lindsey herein, Lindsey's seventh assignment of error also lacks merit and is overruled.

## Conclusion

{¶ 41} For the reasons outlined above, and finding no merit to any of the arguments presented within the seven assignments of error raised by Lindsey herein, including those not directly addressed within this opinion, Lindsey's appeal from the trial court's decision dismissing his untimely, second or successive petition for PCR is denied.

{¶ 42} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.